# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

PAUL A. SMITH,                                    :

      Petitioner,                          :        Case No. 3:06CV167

 vs.                                                    :        District Judge Walter Herbert Rice
                                                              Magistrate Judge Sharon L. Ovington

GORDON LANE, Warden,                       :

      Respondent.                          :

                                                       :

---

## REPORT AND RECOMMENDATIONS[1]

---

Petitioner Paul A. Smith, brings this case pro se seeking a writ of habeas corpus under 28 U.S.C. §2254.  (Doc. # 2). This matter is before the Court upon Respondent's Motion to Dismiss (Doc. # 6) to which Petitioner did not respond. However, on May 30, 2007, Petitioner submitted a letter in which he requests appointment of counsel. (Doc. # 11). Respondent has moved to dismiss the habeas corpus petition as to all claims because they are barred by the one-year period of limitation contained in 28 U.S.C. § 2244(d).

### II. Statement of Facts and Procedural History

The Court of Appeals, Second Appellate District, Miami County, Ohio, set forth the facts of this case on direct appeal. These factual findings "shall be presumed to be correct," and Smith

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

has "the burden of rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998):

> When she was about ten years old, Smith's step-daughter, B-- B--, told a friend that Smith had raped her. The friend's mother told B-- B--'s mother, who elicited from B-- B-- that it was true, Smith had raped her on three occasions, from 1989 to 1992. The mother, Rita Smith, then took her daughter for a medical examination. Ultimately, Piqua Police Officer, Marty Grove, took B-- B--'s statement and conducted an investigation.

> Grove consulted with an assistant prosecutor and was told that the statement he received from B-- B-- would not justify arresting Smith at this point, but that if Smith would confess, he should be arrested.

> Grove went to Smith's residence and woke him up a little after midnight on February 12, 1993. At this time, Grove only told Smith that he wanted to question him about complaints involving Smith and his step-daughter. Smith was offered the choice of driving down to the police station or riding with Grove in Grove's cruiser, and Smith chose to ride with Grove.

> At the station house, Smith was advised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. He was not given any further indication of the offenses of which he was suspected, despite the fact that Grove had talked to B-- B--, and knew that Smith was accused of having forcibly raped his step-daughter.

> Smith waived his *Miranda* rights, and was generally cooperative throughout the interview. The interview was videotaped, but, unfortunately, the microphone was not on. Accordingly, there is no recording of the interview, and no transcript. During the suppression hearing, Grove testified in some detail concerning the interview.

> At the outset of the interview, but after Smith had waived his *Miranda* rights and agreed to the interview, Grove advised Smith that he "had received a complaint indicating that there were some things goin' on between him and his step- daughter, possibly some sexual activity." What transpired thereafter was described by Grove as follows:

> * * * . He immediately stated that there'd never been any kind of sexual activity between 'em.

> I asked him if there had been anything that might be construed as inappropriate or anything that he could think of that might have happened. He said nothin' that he could remember.

2

I talked to him a little bit about, you know, the victim had said they rough housed, they picked on each other quite a bit, just playin' around. I asked Mr. Smith about this, whether this ever got carried away and he came right out and said, "well, if you mean have I ever touched her breasts," he goes, "I have done that." He said, "I've pinched her breasts."

As the interview developed, Smith was able to recall removing his step-daughter's underwear, and his own underwear falling down to his ankles. As a matter of fact, Smith's recollection of events was reasonably consistent with B-- B--'s, except that Smith initially denied ever having penetrated her sexual organ with his own. When Smith was advised that information from a doctor who had examined B-- B-- was that she was no longer a virgin, Smith said, "well, I don't think I penetrated her, I really can't remember."

Smith was immediately arrested and charged with three counts of Rape of a person under the age of thirteen by the use of force or threat of force. Smith moved to suppress the statements he made during the course of his interview with Grove. Following a hearing, his motion to suppress was denied.

A jury found Smith not guilty of one of the three counts, but guilty of the other two. A judgment of conviction was entered, and Smith was sentenced to two concurrent life sentences. ( Doc. # 6, Exhibit 6).

On February 22, 1993, a Miami County Grand Jury issued a three count indictment against Smith charging him with three counts of rape. (Doc. # 6, Exhibit 1, Case No. 93CR51). Smith entered pleas of not guilty and the case was set for trial.  The case proceeded to a jury trial on August 3, 1993. On August 5, 1993, the jury returned a verdict of guilty to counts two and three, and a verdict of not guilty on count one. On August 10, 1993, the court sentenced Smith to serve a term of life imprisonment. (Doc. # 6, Exhibit 3).

On August 18, 1993, Smith, represented by the same counsel as at trial, filed a timely appeal of his conviction to the Second District Court of Appeals, Miami County, Ohio, raising two assignments of error:

1.      The trial court erred in overruling Appellant's motion to suppress and allowing Patrolman Grove to testify as to the statement obtained on February 11, 1993.

2. The jury verdicts on counts 2 and 3 of the indictment were against the manifest weight of the evidence.

(Doc. # 6, Exhibit 4). On October 5, 1994, the Court of Appeals affirmed the judgment of the trial court. (Doc. # 6, Exhibit 6).

On April 13, 1995, Smith, pro se, filed a motion for leave to file a delayed appeal in the Ohio Supreme Court of the Court of Appeals affirmation of his conviction. In his memorandum in support of jurisdiction he set forth the following three propositions of law:

I. A video tape, without the audio, and testimony as to the contents of the video tape, do not establish a confession was voluntary. Where it is not proven that the Defendant understood the abstract meaning of the Miranda warning and the consequences of the rights he was waiving, which violates his Fifth Amendment Right

II. Evidence is insufficient to sustain a conviction, when the victim states, (1) a physically impossible fact (2) commits perjury, (3) ellics (*sic*) sympathy by crying on the witness stand, (4) the state uses testimony that is the product of criminal conduct, (5) hearsay is allowed that cannot be confirmed by an impartial source, (6) the victim has a history of making false accusations.

III. Appellant was deprived of his right to effective assistance of appellant counsel, by counsel's failure to assign errors of merit, and by the fact that trial counsel was assigned as appellate counsel. (Doc. # 6, Exhibit 7).

On May 17, 1995, the Ohio Supreme Court denied leave to file a delayed appeal and dismissed the appeal. (Doc. #6, Exhibit 8). Petitioner did not appeal this decision to the U.S. Supreme Court.

On July 22, 1997, Smith, *pro se*, filed a motion for leave to file motion for new trial pursuant to Crim. R. 33 and Crim. R. 57 raising prosecutorial misconduct, witness perjury, and

4

actual innocence and setting forth new evidence he alleged substantiated these claims. (Doc. # 6, Exhibit 11). On July 24, 1997, the Court overruled the motion for leave to file motion for new trial. (Doc. # 6, Exhibit 12).

On August 20, 1997, Smith, *pro se*, filed a timely appeal of the denial of his motion for leave to file a motion for new trial to the Second District Court of Appeals raising two assignments of error:

1.  The time limit for filing a motion for a new trial, pursuant to Criminal Rule 33(B) is tolled by the Ohio Revised Code under Section 2901.13(A)(1) and (F), when the motion states the use of perjury to obtain the conviction of of *(sic)* the Appellant, and was not found until the expiration of the time allotted under the Ohio Revised Code.

2.  The trial court abused it's *(sic)* discretion and committed prejudicial and plain error, when it overruled the petition of the Appellant for a new trial, based on newly discovered evidence, resulting in a denial to the Appellant of his rights to due process and the equal protection of the law, under the sixth, and Fourteenth Amendments to the United States Constitution, and where there was evidence of a prior injury to the alledged *(sic)* victim that does not comport with the testimony given, and the failure of the State to bring forward this information, as well as it's *(sic)* reliance on perjured testimony, failing to thus prove all the elements of the offense. (Doc. # 6, Exhibit 13).

On March 27, 1998, the Court of Appeals affirmed the judgment of the trial court. (Doc. # 6, Exhibit 14). Smith did not appeal the Court of Appeals affirmance of the trial court's denial of his motion for a new trial.

On July 7, 1998, Smith, *pro se*, filed a request for new trial pursuant to Crim. R. 33 et seq. (Doc. # 6, Exhibit 15).  On August 12, 1998, the Court overruled the request for a new trial. (Doc. # 6, Exhibit 16).  On September 14, 1998, Smith, *pro se*, filed an untimely appeal of the denial of his request for a new trial to the Second District Court of Appeals, raising two

assignments of error:

1.  The trial court erred in the numerical designation of §2907.02 subsection (A)(1)(b), or the omission of the numerical designation of §2907.02 subsection (A)(2)(B), in the indictment or information and the error or omission did prejudicially mislead the Defendant as a matter of law, and deprive him of his right to a fair trial, when two offenses are set forth in a statute, indictment, count in the indictment, or information must set forth specific subsection under which Defendant is being charged.

2.  The trial court erred in the omission of a vital and material element constituting an offense under §2907.02(A)(2)(B) of the Revised Code of Ohio to wit: "Purposely" as defined under §2901.22(A), and since the material and essential facts which constitute an offense under §2907.02(A)(2)(B) are found by the presentment of the grand jury, the trial court erred in imposing a life sentence upon the accused where a vital and material element identifying and characterizing the offense is omitted from the indictment such defective indictment is insufficient to charge an offense, and cannot be cured by the court. (Doc. # 6, Exhibit 17).

On January 29, 1999, the Court of Appeals dismissed the appeal for not being timely filed. (Doc. # 6, Exhibit 19). Smith did not appeal this decision to the Ohio Supreme Court.

On July 30, 2002, Smith, *pro se*, filed his first of two applications to reopen his direct appeal raising the claim of ineffective assistance of appellate counsel for:

1.  Counsel's failure "to object to the basic of the prosecutors failing to disclose that the Appellant was never given his Miranda Warrnings *(sic)* under the Fifth Amendment of the United State *(sic)* Constitution."
2.  "Failure to provide defendant with any discovery until day of trial is evidence per se of defendants *(sic)* inability to effectively present credibile *(sic)* defense.
3.  "The appellant aver!S *(sic)* that counsel failed to protect his rights".
4.  "Counsel representation fell below an objective standard of reasonableness".
5.  Petitioner "was prejudiced by counsel's deficent *(sic)* performance.
6.  "Prosecution erred by withholding evidence that woulfd *(sic)* have changed the outcome of the trial." ( Doc. # 6, Exhibit 20).

6

On September 19, 2002, the Court of Appeals denied the application as being untimely filed. (Doc. # 6, Exhibit 21). Smith did not appeal the Court of Appeals denial of his first application to reopen his direct appeal to the Ohio Supreme Court.

On November, 15, 2002, Smith, *pro se,* filed his second untimely application to reopen his direct appeal along with a memorandum in support. (Doc. # 6, Exhibit 22). On November 8, 2003, the Court of Appeals denied the application as being untimely filed. (Doc. # 6, Exhibit 23). Smith did not appeal the Court of Appeals denial of his second application to reopen his direct appeal.

On August 31, 2004, Smith filed the instant Petition for Writ of Habeas Corpus in the Northern District, which transferred the case to the Southern District on June 7, 2006. Smith's Petition for Writ of Habeas Corpus sets forth the following eight grounds for relief:

> **GROUND ONE**: THE PETITIONER'S CONVICTION WAS OBTAINED BY THE USE OF A VIDEO TAPE, WITHOUT THE AUDIO, AND TESTIMONY AS TO THE CONTENTS OF THE VIDIO *(sic)* TAPE, DO NOT ESTABLISH A CONFESSION WAS VOLUNTARY. WHERE IT DOES NOT PROVE THAT THE DEFENDANT UNDERSTOOD THE ABSTRACT MEANING OF THE MIRANDA WARNINGS AND THE CONSEQUENCES OF THE RIGHTS HE WAS WAVING, WHICH VIOLATED HIS 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

> **Supporting Facts**: Not only must a defendant be informed of his rights, but he must also understand those rights. Including the abstract concepts of those rights. It is submitted that the abstract concepts would be difficult for the Petitioner, particularly those describing his Constitutional Rights, and the concept of waiving those rights. The Petitioner has a low I.Q. and is learning impaired. He attended special education; Therefore, it is doubtful that the Petitioner truly understood whether or not he had any constitutional protections or rights as explained by Officer Grove.
> A review of the video tape will demonstrate that nothing can be deduced from it verbally *(sic)* However, a careful scrutiny of the visual demeanor of the person in the video tape will give this Court some guidance in resolving the issue. Therefore, this Court is now

asked to review the Ohio State Court rulings in this matter.


**GROUND TWO:** THE EVIDENCE PRESENTED IN THIS CASE IS INSUFFICIENT
TO SUSTAIN A CONVICTION


**Supporting Facts:** Petitioner requests this Court to review all of the evidence presented;
in the victim's testimony involving the Petitioner and his step-daughter; all testimony of
alleged sexual penetration; And, Dr. Tordillo's testimony; And, the testimony of officer
Grove and Beth Weaver regarding the initial interview, and in regards to the alleged
admissions made by the Petitioner."


**GROUND THREE:** PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT
TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND ON APPEAL,
WHEN TRIAL COUNSEL WAS THE SAME AS APPELLATE COUNSEL.


**Supporting Facts**: Trial counsel was ineffective in his failure to: (1) Challenge or
properly cross-examine the victim, or to impeach the testimony of the victim; (2) To
properly object to the statements given to the nurse which falls under the medical
exception rule; (3) To move the Trial Court to strike the testimony of the State's Expert
witness, whose testimony did not meet the medical certainty test; (4) To properly object
and challenge the testimony of Beth Weaver; (5) At the time of sentencing, trial counsel
failed to object to the sentence imposed, and to present any mitigating factors on behalf
of the Petitioner.

Appellate counsel was the same as trial counsel; And, as such, he is not expected to raise
his own acts of ineffective assistance at trial, nor can he impartially review the record for
error.


**GROUND FOUR:** THE TRIAL COURT ERRORED IN DENYING THE
PITITIONERS *(sic)*MOTION FOR LEAVE TO FILA *(sic)* A MOTION FOR A NEW
TRIAL, PURSUANT TO CRIMINAL RULE 33(B).


**Supporting Facts**: Petitioner contends that the trial court should have granted his Crim.
R. 33 motion for leave to file a motion for a new trial because he was entitled to a new
trial on the grounds of misconduct of the prosecuting attorney, and witnesses for the state
and newly discovered evidence.

Simply stated, the time limits set forth in Ohio Criminal Rule 33(B) should have been
tolled by the statute of O.R.C. §2901.13(A)(1) and (F), thereby not allowing the
limitations set forth in the aforementioned Criminal Rule, and allowing the Criminal Rule

to take precedence over the above stated statute."

**GROUND FIVE**: THE TRIAL COURT ABUSED IT'S DISCRETION AND COMMITTED PREJUDICIAL AND PLAIN ERROR, WHEN IT OVERRULED THE MOTION OF THE PETITIONER FOR A NEW TRIAL, BASED ON NEWLY DISCOVERED EVIDENCE, RESULTING IN A DENIAL TO THE PETITIONER OF HIS RIGHTS TO DUE PROCESS AND THE EQUAL PROTECTION OF THE LAW, WHERE THERE WAS EVIDENCE OF A PRIOR INJURY TO THE ALLEGED VICTIM, THAT DOES NOT COMPORT WITH THE TESTIMONY GIVEN AT TRIAL, AND THE FAILURE OF THE STATE TO BRING FORWARD THIS INFORMATION AS WELL AS IT'S RELIANCE ON PERJURED TESTIMONY, FAILING TO THUS PROVE ALL THE ELEMENTS OF THE OFFENSE.

**Supporting Facts**: As in artful as the motion for new trial may have been presented, this pro se litigate *(sic)* presented sufficient evidence to obtain a new trial. Based on Allegations of misconduct by the prosecuting attorney, witnesses for the state, and newly discovered exculpatory evidence. The evidence forming the basis of the Petitioner's motion consisted of medical records of Dr. Tordilla's examination of Brandy, 1993 records of Miami County Children's Services Board, 1984 – 1985 records of the Children's Services Board involving documentation of sexual assault against Brandy, etc. The Petitioner submits that had he been able to present these documents at trial, the jury would probably have concluded that brandy *(sic)* had not been sexually assaulted by him; And, the state could not have proven the element of sexual penetration required to sustain the rape offense.

**GROUND SIX**: PETITIONER WAS DEPRIVED OF HIS CONSTITTUIONAL *(sic)* RIGHTS GUARANTEED BY AND THROUGH THE 6TH AND 14TH AMENDMENT TO THE EFFECTIVE ASSISTANCE OF CONFLICT-FREE COUNSEL AT TRIAL AND ON APPEAL OF RIGHT.

**Supporting Facts**: Petitioner submits that he did not have a Preliminary Hearing within the 10 days requied *(sic)* by law, and that it took 15 days before he seen an attorney in this case. The issue was not raised at the time of trial or on direct appeal of his conviction by court appointed counsel.

**GROUND SEVEN**: PETITIONER'S CONVICTION CONSTITUTES A MANIFEST MISCARRIAGE OF JUSTICE WHERE NEW EVIDENCE REVEALS THAT HE IS ACTUALLY INNOCENT OF THE CRIMES THAT HE WAS CONVICTED OF.

**Supporting Facts** (See Question Number 12. D, Ground Four, and 12. E. Ground Five,

above).

**GROUND EIGHT**: WHETHER THE SCIENTIFIC EVIDENCE PRESENTED AT TRIAL BY THE STATE OF OHIO WAS FUNDAMENTALLY INACCURATE AND RESULTED IN THE CONVICTION OF THE PETITIONER WHO IS ACTUALLY INNOCENT.

**Supporting Facts** (See the facts stated under Question Number 12. B. above).

I.                                **ANALYSIS**

   **A.    The Petition is time-barred by the applicable statute of limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which

became effective on April 24, 1996, requires a state prisoner claiming violations of the United

States Constitution to file a federal habeas corpus petition within one year from the conclusion of

his or her state appeal.  28 U.S.C. §2244(d)(1)[2]; *see Austin v. Mitchell*, 200 F.3d 391, 393 (6th

Cir. 2000).  If a petitioner's conviction became final before the date the AEDPA became

effective in April 1996, "a one-year grace period applies, and ... the statute of limitations expires

one year from the passage of the AEDPA, on April 24, 1997." *Austin*, 200 F.3d at 393.

Smith initially filed his petition for a writ of habeas corpus in the United States District

Court for the Northern District of Ohio on August 31, 2004. The case was transferred to the

---

[2] Section 2244(d) states in pertinent part:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Southern District of Ohio on June 7, 2006. For a petitioner whose conviction became final before the effective date of the AEDPA, the petitioner has one year after the effective date of the AEDPA (from April 24, 1996, until April 24, 1997) in which to file his action attacking the conviction. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir. 2002) . Smith's conviction was final before the passage of the AEDPA. Therefore, he should have filed his habeas petition on or before April 24, 1997. It was filed on August 31, 2004, over seven years past the one year grace period. The petition is time barred.

Further, the running of the limitations period is only statutorily tolled under section 2244 during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims. If the pleading is not properly filed there is no tolling. An application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings…. *Pace v. DiGuglielmo*, --- U.S. ---, 125 S.Ct. 1807, 161 L.Ed. 2d 669 (2005)(citing *Artuz v. Bennett*, 531 U.S. 4, 8, 11(2000)). Further, regardless of 28 U.S.C. §2244(d)(2), once the one year limitations period has expired it cannot be revived. *Vroman v. Brigano*, 346 F.3d 598, 601-602 (6th Cir. 2003), quoting *Rashid v Khulmann*, 991 F.Supp. 254, 259 (S.D.NY 1998) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). All habeas grounds are barred by 28 U.S.C. § 2244(d)(1)(A). Smith filed his habeas petition on August 31, 2004, well after April 24, 1997, the ending date of the one year grace period for convictions that were final prior to the passage of the AEDPA. Further, no pleadings were pending on that date. This petition is time barred. *Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999).

**B.** **Even Assuming Habeas grounds four, five and seven, alleging the same newly discovered evidence entitled Smith to use the later start date contained in 28 U.S.C. § 2244(d)(1)(D) the petition is time barred.**

Even if the later start date of 28 U.S.C. § 2244(d)(1)(D) is utilized as to habeas grounds four, five, and seven, assuming that Smith did not discover the factual predicate of these claims until on or about July 22, 1997, when he filed his first motion for a new trial, Smith's petition is time barred.

Under § 2244(d)(1)(D), which states that the start date of the one year period of limitation commences upon "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," the relevant inquiry is when the petitioner knew or should have known the factual predicate of his claim, not when he recognized the legal significance or understood the legal theory of the claim. *Owens v. Boyd*, 235 F.3d 356 (7th Cir.2000). In the instant case, Smith filed a motion for leave to file a delayed motion for new trial and simultaneously the motion for new trial itself alleging that three items of newly discovered evidence showed prosecutorial misconduct, witness perjury, and actual innocence. The three items of new evidence were set forth by the Court of Appeals in reviewing the trial court's denial of leave to file a motion for new trial:

> The evidence forming the basis of Smith's motions consisted of medical records of Dr. Tordilla's examination of Brandy, medical records of a 1996 gynecological examination of Brandy, 1993 records of the Miami County Children's Services Board involving the ability of Brandy's natural father, Jeffrey Butts, to obtain custody over her, 1984-1985 records of the children's services board regarding Jeffrey Butts' sexual assault against Brandy, and an August 29, 1985 letter written by Dr. J. Anthony Wurtsbaugh suggesting that Brandy had a history of possible sexual abuse and that his examination of her had revealed symptoms of sexual abuse "with penetration of at least the introitus." The 1984-1985 children's services board records indicated "a history of sexual abuse from the natural father." The "Behavior Contract Between Rita and Jeff Butts and Miami County Children's Services," signed on February 13, 1984, provided that Jeffrey Butts would, *inter alia,* [n]ever get into bed with Brandy" and that Rita Butts would "[t]ake

Brandy to the Well Child Clinic to have her checked for possible sexual abuse" and would "[n]ever leave Brandy alone with Jeff, even in the same room." (Doc. # 6, Exhibit 14, p. 5).

The Court of Appeals stated in denying relief:

Smith's motion for leave to file a motion for new trial contained unverified, nonspecific allegations that the state had willfully hidden or withheld from him documentary evidence that, if presented at trial, would probably have led to an acquittal of the rape charges. He provided no support for his claims that the state had had control over these documents prior to trial, that it had chosen to withhold such evidence from him, and that he could not have known about such conduct in time to file a motion within fourteen days of the verdict. Because Smith failed to establish "by clear and convincing evidence" that he had been unavoidably prevented from filing a timely motion for new trial, the trial court acted reasonably in denying him leave to file a motion for a new trial based on prosecutorial misconduct. Likewise, Smith's unsupported allegations that Brandy and Dr. Tordilla offered perjured testimony fail to meet the clear and convincing standard.

Furthermore, Smith did not present clear and convincing evidence explaining why he had been unavoidably prevented from discovering these documents w[thin one hundred twenty days of the verdict. He merely stated that "since his arrest for this offense, he has never been free to obtain the herein documents or had the skills to know how to obtain the evidence." Although a closer call is presented with respect to Smith's Crim.R. 33(A)(6) claims than his Crim.R. 33(A)(2) claims, the fact of his incarceration, without more, does not amount to clear and convincing proof that he was unavoidably prevented from discovering the evidence within the time limitations of Crim.R. 33(B). Thus, the trial court did not abuse its discretion in denying Smith leave to file a motion for new trial.

Even assuming, however, that Smith had satisfied the Crim.R. 33(B) standards for obtaining leave to file a motion for a new trial, he would not have been entitled to a new trial under either alleged basis for relief. Smith's claims under Crim.R. 33(A)(2) would not have led the trial court to grant him a new trial because he neglected to attach an affidavit showing the truth of his allegations of prosecutorial and witness misconduct, as required by Crim.R. 33(C). See *State v. Rogers* (1990), 68 Ohio App.3d *4, 7* (citing *Toledo v. Stuart* (1983), 11 OhioApp.3d 292, 293 for the proposition that a trial court may summarily dismiss a Crim.R. 33(A)(2) motion when the movant fails to attach an affidavit). Furthermore, Smith's claims under Crim.R. 33(A)(6) would not have provided him with a basis for obtaining a new trial because the new evidence did not disclose "a strong probability that it will change the result if a new trial is granted." State *v. Barber* (1982), 3 Ohio App.3d 445, 447. Although Smith had not been able to present at trial the documentary evidence of prior sexual assault against Brandy, he did elicit from Rita Smith and Officer Grove that Brandy had a history of sexual assault by her natural father. During Rita Smith's direct examination, the following dialogue took place:

Q.      Rita, when you first learned of these allegations against Paul Smith

13

> in February, 1993, this wasn't the first time that Brandy had been victim of a sexual - an alleged sexual assault, isn't that correct?
>
> A.    That's correct.
>
> Q.    Okay. Could you tell the Jury the other occasions where Brandy had been the victim of an alleged sexual assault? When did the first occasion occur?
>
> A.    A few months before she was two years old.
>
> Rita Smith then explained that, upon arriving at home and seeing Jeffrey Butts watching television with Brandy, whose "training pants were down," she had suspected that he had molested the toddler. Rita Smith testified that she had immediately taken Brandy to Dr. Wurtsbaugh, who conducted an examination, determined that "she had been touched." and called the police and the children's services board. Rita Smith further testified that one day the following year, she had heard Brandy screaming and that Brandy had explained that "her Uncle Pat had hurt her -- hurt her with a spoon." Rita Smith stated that when Dr. Wurtsbaugh had examined Brandy this time, he again determined that she had been molested. Smith also elicited from Officer Grove that he had been aware of the prior sexual assault against Brandy.
>
> Because the Jury found Smith guilty of rape despite having heard testimony that Brandy had been sexually assaulted in earlier years by her natural father, the trial court acted reasonably in finding that Smith's motion for a new trial had not shown that the outcome of a new trial, if granted, would probably be different than that of the original trial. Thus, even assuming that the trial court should have granted leave to file a motion for a new trial, Smith would not have been entitled to a new trial.
>
> (Doc. # 6, Exhibit 14, pp. 8-11).

Even if Smith had shown his entitlement to the use of the later start date of 28 U.S.C. § 2244(d)(1)(D), the one year period of limitations expired years before he filed the instant petition. Thus, the three habeas grounds, four, five and seven are time barred, even if 28 U.S.C. § 2244(d)(1)(D) is utilized.

**C.    Petitioner's claims of actual innocence and exemption from statute of limitation under § 2244(d)(1)**

Finally, the one year period is subject to equitable tolling as the section 2244(d) statute of limitations is not a jurisdictional bar. *See Dunlap v. United States*, 250 F.3d 1001,

14

1003 (6th Cir. 2001). However, a petitioner must show that he was prevented from filing his petition on time based on the factors set forth in *Andrews v. Orr*, 851 F.2d 146 (6th Cir. 1988):

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Dunlap*, 250 F.3d at 1009.

The Sixth Circuit has held that "equitable tolling of the statute of limitations based on a credible showing of actual innocence is appropriate." *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). The Court elaborated by stating "where an otherwise time-barred habeas petitioner can demonstrate that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt, the petitioner should be allowed to pass  through the gateway and argue the merits of his underlying constitutional claims." *Id*. at 602.

The petitioner bears the burden of demonstrating that he is entitled to equitable tolling. The doctrine is used sparingly by federal courts. Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. Absent compelling equitable considerations, a court should not extend limitations by even a single day. *Jurado v. Burt*, 337 F.3d 638, 642-643 (6th Cir. 2003). The Supreme Court has explained that "we have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v.Dep't of Veterans*

*Affairs*, 498 U.S. 89, 96 (1990). However, "we have generally been much less forgiving . . .
where the claimant failed to exercise due diligence in preserving his legal rights." *Id.; cf.
Baldwin County Welcome Ctr. v. Brown*, 466 U.S.147,151, (1984) ("One who fails to act
diligently cannot invoke equitable principles to excuse that lack of diligence."). "Absent
compelling equitable considerations, a court should not extend limitations by even a single
day." *Graham-Humphreys*, 209 F.3d at561. *See Jurado v. Burt*, 337 F.3d 638, 642-643 (6th
Cir. 2003). In the instant case, Smith has not offered any explanation for his failure to file his
habeas petition within the one year time frame. He has failed his burden of proof. As to actual
innocence, as stated by the Court of Appeals in reviewing this same evidence: "Because the
Jury found Smith guilty of rape despite having heard testimony that Brandy had been sexually
assaulted in earlier years by her natural father, the trial court acted reasonably in finding that
Smith's motion for a new trial had not shown that the outcome of a new trial, if granted,
would probably be different than that of the original trial." (Doc. # 6, Exhibit 14). Thus, even
assuming that the trial court should have granted leave to file a motion for a new trial, Smith
would not have been entitled to a new trial.

Smith has not shown it is more likely than not that no reasonable juror would have
found him guilty beyond a reasonable doubt. He therefore has not established his actual
innocence claim. Accordingly, Smith is not entitled to equitable tolling.

In the instant case, the conclusion that Smith's petition is time barred is not
debatable by jurists of reason.  Smith's request for the appointment of counsel should be
denied. Smith's habeas Petition and contentions do not otherwise present issues adequate to
deserve encouragement to proceed further.  Consequently, a certificate of appealability should

16

not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.    Smith's Motion to Appoint Counsel (Doc. # 11) be **DENIED;**

2.    Smith's Petition for a Writ of Habeas Corpus (Doc. #2) be **DISMISSED**; and,

3.    The case be terminated on the docket of this Court.

June 22, 2007

s/ Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).